## Case No. 8,385.

### In re LITCHFIELD.

[7 Ben. 259;[1] 9 N. B. R. 506.]

District Court, S. D. New York. April 14, 1874.

**DEATH OF BANKRUPT—ISSUING OF WARRANT.**

1. An order of adjudication in a proceeding in involuntary bankruptcy was entered on November 3d. 1873. On the 27th of November the bankrupt died, and on the 27th of December following the warrant was actually issued: *Held,* that the court had not lost jurisdiction of the proceedings.

2. Under the twelfth section of the bankruptcy act [of 1867 (14 Stat. 522)] the words "issuing of the warrant" must be taken to be synonymous with the words "entering of the order of adjudication."

[In the matter of Elisha C. Litchfield, a bankrupt.]

Anderson & Man, for creditor.

Brown, Hall & Vanderpoel, for assignee.

---

## Case No. 8,386.

### In re LITCHFIELD.

[18 N. B. R. 347; 26 Pittsb. Leg. J. 76.][1]

District Court, S. D. New York. Sept. 19, 1878.

**BANKRUPTCY—LITIGATION AT TIME OF BANKRUPTCY—SUBSTITUTION OF ASSIGNEE—WITHDRAWAL—COUNSEL FEES—COSTS.**

In 1868, a suit was commenced by one T. against C. and others for the joint benefit of the bankrupt and one W., who had agreed to share in the results of the litigation and bear its expenses in equal proportions. A judgment was recovered in favor of T., from which an appeal

---

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

[1] [Reprinted from 18 N. B. R. 347, by permission. 26 Pittsb. Leg. J. 76, contains only a partial report.]

was taken about the time the proceedings in bankruptcy were commenced. The assignee in bankruptcy was substituted in place of the bankrupt, who was a defendant in the suit, and contributed to the payment of counsel fees and expenses until he gave notice that he would pay no more expenses. Afterwards, under an order of the court, the assignee was permitted to withdraw and assign all his interest in the litigation to W. The judgment was reversed by the general term, and a new trial ordered, and the court of appeals affirmed the judgment of the general term. The counsel having, after the termination of the suit, presented a claim against the assignee for their services before as well as after his substitution, *held*, that they were only entitled to payment for their services and disbursements after the assignee stipulated to be substituted, and that W., by taking the assignment of the assignee's interest, assumed all its burdens, and has no equity to demand reimbursement from the assignee.

[In the matter of Elisha C. Litchfield, a bankrupt. The case was previously heard upon the question as to what effect the death of the bankrupt, occurring between adjudication and warrant issued, had upon the proceedings. Case No. 8,385.]

W. S. Palmer and Jos. P. Whittemore, for petitioners.

W. Howard Wait, for assignee.

CHOATE, District Judge. This is a motion to confirm the report of the register in the matter of a claim against the estate of the bankrupt for the services and disbursements of counsel and attorneys, rendered and incurred in a litigation carried on by the bankrupt before his bankruptcy, and afterwards by the assignee, who was substituted as a party in his place. The suit was commenced in 1868 by one Ten Eyck against one Craig and others; but it was in fact carried on for the joint benefit of the bankrupt and one Whittemore, under an agreement between the bankrupt and Whittemore that they should share in the results of the litigation and bear its expenses in equal proportions. The counsel who now make this claim were retained with knowledge of this agreement. Prior to the commencement of the bankruptcy proceedings a judgment was recovered favorable to the bankrupt and Whittemore. From the judgment thus obtained an appeal was taken to the general term of the supreme court of New York, in which the action was pending, and about the same time, October, 1873, these proceedings in bankruptcy were commenced by creditors' petition.

Pending the appeal, the assignee in bankruptcy was, by order of the court and on his own application, substituted as a party in place of the bankrupt, who was a party defendant in the suit. From that time until he gave notice that he would pay no more expenses, the assignee contributed to the payment of counsel fees and expenses as called for by counsel, and afterwards, under an order of this court, the assignee was permitted to withdraw from the litigation and assign all his interest in the subject of it to

Whittemore. The general term reversed the judgment, and ordered a new trial, and on appeal to the court of appeals the judgment of the general term was affirmed, and the result of the litigation is, that Whittemore recovers nothing, and is liable for one thousand and forty-two dollars, costs. After the termination of the suit, the counsel presented their claim against the assignee, asking to be paid their charges for services and disbursements prior to the substitution of the assignee as a party to the litigation, as well as those subsequent to that date.

The matter was referred to the register, who has disallowed the claim, except as to services rendered and disbursements incurred after the assignee stipulated to be substituted as a party to the suit, and the question is as to the correctness of this ruling. It is insisted that the assignee by electing to carry on the litigation, and by becoming a party to it, took the place of the bankrupt, and thereby became entitled to all the resulting benefits and charged with all the burdens with which his predecessor was charged, and that he became a partner with Whittemore in the adventure, and liable, as between himself and Whittemore, for all the existing obligations, which, under the agreement between him and the bankrupt, were then chargeable upon the bankrupt. It is also insisted that the claim of counsel for services in a suit is a single and indivisible claim not apportionable, unless by agreement or special circumstances among several persons who successively and by assignment or substitution sustain the relation of clients to the counsel, and therefore that the new client becomes at once and necessarily charged with all the obligations to the counsel which rested upon predecessor at the time of substitution. I have examined carefully the briefs of counsel and the cases cited in support of this claim, and do not think they sustain the position taken.

This is not a question whether attorneys have a lien on the proceeds of litigation for their services and disbursements at all stages of the suit, whatever may have been the changes of parties. Many of the cases cited are cases as to the liability of a new or substituted party to costs accrued during all stages of the suit as between party and party. I do not see that these cases have any analogy to the present. Costs must be chargeable against a party, and the party at the time the judgment for costs is recovered is necessarily chargeable with them, if anybody is. There is no reason why the party recovering costs should lose them because the other party has been changed by substitution. But the claim of counsel for compensation rests wholly in contract, express or implied, and is like in its character, as between party and party, the claim for costs. The liability to costs, as between party and party, is artificial and statutory,

partly punitive and partly compensatory, and based on various reasons of public policy, and not on contract at all.

The claim of these petitioners must depend either on the principle that their claim for their entire service is indivisible, and therefore necessarily became chargeable against the assignee as an entirety on his substitution, thus releasing the bankrupt; or, if the claim is in its nature divisible, the claim can only be sustained on an agreement, to be implied from the circumstances, that the assignee would assume and pay these prior expenses of the bankrupt. There was no express agreement of the assignee to, pay them. The case chiefly relied on as establishing the rule contended for, that the entire charge for services of counsel in a litigation is a single and indivisible cause of action, is the case of Harris v. Osborn, 2 Cr. & M. Exch. 629, in which case it was held that an attorney's claim for his costs as against his client during the entire course of a suit constitute a single claim or cause of action, within the meaning of the statute of limitations, so that no part of it is barred if the last item is within the term within which an action lies. That case and the cases on which it is based do not hold that such a claim for costs even is not, under any circumstances, unapportionable. They recognize the right of the attorney to protect himself by giving notice that he will not proceed unless the necessary funds are provided, and, in case of a failure in providing means, to terminate the relation and sue for his costs already accrued. It holds that, for reasons based on the peculiar relation between client and attorney, the attorney cannot sue before the end of the litigation without a prior demand and refusal or neglect to furnish funds. The authority of that case need not be questioned. It relates only to liabilities to costs between attorney and client, as regulated by statute and practice in England; and, notwithstanding that authority, counsel may well be held to have a valid and complete claim for services rendered at the close of each well-defined and distinct stage of a litigation, as in the present case at the termination of the suit by judgment in the special term, by the termination of the litigation in the general term, and again in the court of appeals. It may well be doubted whether these are not to be regarded as three distinct suits, a question not touched by the authorities cited.

But, independently of this question, the cases cited are not sufficient to show that counsel may maintain from time to time an action for services rendered in the cause, or at least may not, by their own act and at their election, after a demand, sever the unity of the service, and claim payment for the services already rendered. Such is believed to be the view of the rights of counsel as against the clients, usually accepted and acted on without question by both parties in this country, and such seems to be a reasonable view of the relation between them, and one analogous to other cases of continuous services rendered. It may well be that, if nothing is done to sever the continuity of the service, the entire series of claims will constitute a single cause of action, so far as the statute of limitations is concerned.

It is not necessary, however, to go so far as in this present case, because claims that are single and unapportionable under ordinary circumstances are apportioned by the law when equity so requires, and bankruptcy is one of the events the intervention of which effects such an apportionment by act of the law. And it cannot be doubted that, upon the bankruptcy of Litchfield, the counsel who had served him up to that time had the right to prove against his estate for their services and disbursements up to the time of the filing of the petition, and to receive ratably, with other creditors, a dividend out of the estate. Such has been the constant practice in such cases, and, so far as I have observed, it has never been questioned.

The situation, then, of the counsel at the time of the bankruptcy and the appointment of the assignee was this: The counsel were creditors for the amount already earned and expended, with the same rights as other creditors. If the assignee elected to go on with the suit, which he could do or not, as he chose, and which the counsel could not in any way compel him to do, he would, of course, become liable to pay, like any other person, a reasonable compensation for all services rendered to him. He could also choose his own counsel, and change his attorney at will, subject to the necessity of discharging any lien on necessary papers in his attorney's hands.

No court has yet denied the general right of the suitor to change his attorney, where there was no agreement other than that to be implied from a general retainer. What ground is there, then, for implying, from the mere fact that the assignee employs the same counsel to go on with the litigation, a promise on his part to pay in full out of the estate in his hands this prior claim, for which the counsel have before such new employment only a right to share in the estate as a creditor? If he had chosen to employ other counsel, it could not be contended that they would be entitled to anything more than a quantum meruit for their services thereafter rendered. And I can see no principle of equity or ground of reason upon which, by reason of his employing the same counsel, they should become entitled to anything more. But it is still insisted that, even if the counsel cannot of their own right maintain this claim, Whittemore may maintain his right to have the assignee pay one-half of all these charges, on the ground that, under the agreement between Whittemore and the bankrupt, they were partners in the adventure, and that the assignee, by

assuming the place of Litchfield. became, as it were, a purchaser of a partner's interest, and so liable to Whittemore to discharge one-half of all accrued charges, as that was the condition on which the bankrupt held an interest in the claim; that the assignee necessarily succeeded to the same interest, and held it on the same condition. If there is anything in this claim, it is rendered wholly nugatory by the fact that since the assignee thus succeeded to the position of the bankrupt he has, with the consent of Whittemore, reassigned all his interest in the contract to Whittemore; and if the claim is well founded as to the effect of the assignment to the assignee, and thus assuming the position of ·the bankrupt under the contract, the like effect must follow the reassignment to Whittemore. In assuming all the benefits he has assumed all its burdens likewise, and therefore has now no equity to demand reimbursement from the assignee. The point was correctly ruled by the register. Report confirmed.